UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
JEFFREY HALLETT,                :    11 Civ. 4646 (WHP)
                                :
            Plaintiff,          :    MEMORANDUM & ORDER
                                :
        -against-               :
                                :
J. DAVIS, Warden, et al.,       :
                                :
            Defendants.         :
                                :
------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/25/12
```

WILLIAM H. PAULEY III, District Judge:

        Plaintiff pro se Jeffrey Hallett ("Hallett"), a New York state inmate, brings this federal civil rights action against several Rikers Island officials, Prison Health Services ("PHS"), and the City of New York (collectively, "Defendants"). He alleges a potpourri of constitutional violations arising from his time as a pretrial detainee at the George Motchan Detention Center ("GMDC") on Rikers Island. Defendants move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). For the following reasons, Defendants' motion is granted.

## BACKGROUND

        Hallett was a pretrial detainee in the custody of the New York City Department of Correction ("DOC") at the Otis Bantum Correctional Center ("OBCC") and at GMDC on Rikers Island. (Amended Complaint, dated Dec. 19, 2011 ("Am. Compl.") ¶ 3.) On May 26, 2011, Hallett filed a grievance statement with the Inmate Grievance Resolution Committee challenging the conditions of his and other inmates' confinement. (Complaint, dated May 31, 2011 ("Compl.") Ex. 1: Grievant's Statement Form dated May 26, 2011 ("Grievance").) In his

1

grievance statement, Hallett claimed that while at OBCC: (1) he did not receive any toilet paper that he requested; (2) other inmates went without toilet paper for several days; (3) the law library did not have necessary materials; (4) he filed a grievance but did not receive a response; and (5) DOC failed to enforce environmental health standards "stated by Judge Harold Baer Jr." (Grievance at 1-2.) Hallett also claimed that while at GMDC: (1) the Mess Hall did not have enough food; (2) diabetic detainees did not receive appropriate diets; (3) blankets were not washed or exchanged during the winter months; and (4) living conditions were "deplorable" because (a) pretrial detainees were forced to sleep near one another; (b) sleeping areas were overcrowded; (c) some sleeping areas only had one fan and no air conditioning; (d) showers were not "industrialize[d] clean"; and (e) detainees could not clean personal clothing at the facility's laundry. (Grievance at 2-4.) On June 7, 2011, Grievance Supervisor Pauline Mimms returned Hallett's statement and explained that his grievances did not fall within the purview of the Inmate Grievance Resolution Committee. (Am. Compl. Exhibit C.)

On June 10, 2011, Hallett commenced this action. On December 19, 2011, he filed his first amended complaint, which only contains allegations stemming from his confinement at GMDC. (Am. Compl. ¶¶ 1-13). In the amended complaint, Hallett claims that his constitutional rights were violated because: (1) Defendant D. O'Connell, the Deputy Warden of Security, failed to ensure that he was provided with the minimum sixty square feet of living space, which caused him to suffer frequent colds and a sore throat; (2) Defendant Correction Officer Hargrove failed to provide him clean blankets, a clean mattress, and a clean change of clothing at least twice a week, causing him to suffer rashes on both legs; (3) Defendant Correction Officer John Doe, who works in the intake area, failed to take action when Hallett complained that the poor ventilation in the holding cell was causing him difficulty in breathing,

2

dizziness, and "regurgitation"; (4) Defendant Jane Doe—a PHS employee—failed to provide Hallett with appropriate food, causing his diabetes to worsen, and also failed to inform DOC of his medical needs; and (5) Defendant "P. Simms" did not respond to Hallett's grievance until nineteen days after it was filed and failed to instruct him how to appeal the disposition. (Am. Compl. ¶¶ 8-10, 12-13.)

## DISCUSSION

I. Legal Standard

Courts evaluate a Rule 12(c) motion for judgment on the pleadings under the same standard as a Rule 12(b) motion to dismiss for failure to state a claim. See Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). Accordingly, this Court accepts all non-conclusory factual allegations in the complaint as true and draws all reasonable inferences in Hallett's favor. See Bank of N.Y., 607 F.3d at 922; see also Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010). "On a 12(c) motion, the court considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011) (internal quotation marks omitted). A complaint that fails to state a plausible claim to relief will not survive a Rule 12(c) motion. See Bank of N.Y., 607 F.3d at 922.

A pro se litigant's submissions are held to "less stringent standards than [those] drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Courts "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007) (internal quotation marks and citation omitted). Nevertheless, this Court need not accept as true

3

"conclusions of law or unwarranted deductions of fact." First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994).

II. Conditions of Confinement

    A.    Ventilation in Holding Cell

A pretrial detainee's challenge to the conditions of his confinement is analyzed under the Due Process Clause of the Fourteenth Amendment. See Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir. 2009). "In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law . . . the proper inquiry is whether those conditions amount to punishment of the detainee." Bell v. Wolfish, 441 U.S. 520, 535 (1979). Whether a condition amounts to punishment depends on "whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." Bell, 441 U.S. at 540. To state a claim for constitutionally inadequate conditions of confinement, a pretrial detainee must plead facts satisfying both objective and subjective criteria: (1) "the deprivation alleged must be, objectively, sufficiently serious"; and (2) "a prison official must have a sufficiently culpable state of mind[:] deliberate indifference to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 834 (1994); see also Caiozzo, 581 F.3d at 71. Under the objective prong, "only extreme deprivations are sufficient to sustain a 'conditions-of-confinement' claim." Blyden v. Mancusi, 186 F.3d 252, 263 (2d Cir. 1999). Under the subjective prong, "a prison official cannot be liable . . . unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

4

Here, Hallett's allegation that an unspecified officer did not respond when he complained of poor ventilation is not "objectively, sufficiently serious[.]" Farmer, 511 U.S. at 834. "[T]he length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards." Hutto v. Finney, 437 U.S. 678, 686 (1978). Thus, a "filthy, overcrowded cell and a diet of 'gruel' might be tolerable for a few days and intolerably cruel for weeks or months." Hutto, 437 U.S. at 686. Hallett was only placed in a holding cell temporarily on the days in which he had a scheduled court appearance. (Am. Compl. ¶ 10.) A few hours of poor ventilation does not amount to a constitutionally inadequate condition of confinement. See Giglieri v. N.Y.C. Dep't of Corr., 95 CIV. 6853 (RPP), 1997 WL 419250, at *3 (S.D.N.Y. July 25, 1997) (plaintiff failed to state a claim for poor ventilation when he was subjected to "forty-five minutes at a time in a smoke-filled cell on an unspecified number of occasions for no more than a little over a month").

Additionally, the officer's alleged inaction does not satisfy Farmer's subjective prong. Hallett's exposure to poor ventilation for a few hours did not pose such an obvious risk to his health or safety that the officer must have been "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and [that he drew] the inference." Farmer, 511 U.S. at 837. Moreover, "an isolated omission to act by a state prison guard does not support a claim under section 1983 absent circumstances indicating . . . deliberate indifference to the consequences of his conduct for those under his control[.]" Ayers v. Coughlin, 780 F.2d 205, 209 (2d Cir. 1985) (quoting Williams v. Vincent, 508 F.2d 541, 546 (2d Cir. 1974)).

Hallett's ventilation claim also fails because he did not exhaust his administrative remedies. Under the Prison Litigation Reform Act (the "PLRA"), "[n]o action shall be brought

5

with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes[.]" Porter v. Nussle, 534 U.S. 516, 532 (2002). Here, Hallett's grievance statement failed to mention: (1) the poor ventilation in the holding cell; (2) that he suffered dizziness, nausea, and "regurgitation" as a result of poor ventilation; and (3) that the overcrowding caused him to suffer frequent colds and a sore throat. (Am. Compl. ¶¶ 8, 10). Because Hallett failed to raise these allegations through the applicable grievance procedure, he cannot litigate them now.

B.   Overcrowding

Hallett alleges that an unspecified officer failed to respond when he complained of overcrowding in his holding cell. He also alleges that Defendant O'Connell failed to ensure a minimum of sixty square feet of floor space per person in Hallett's sleeping area at GMDC. But these conditions of confinement claims are unavailing. Hallett fails to plead facts plausibly suggesting that the overcrowding was "objectively, sufficiently serious" or that the officers exhibited "deliberate indifference to inmate health or safety." Gaston v. Coughlin, 249 F.3d 156, 164 (2d. Cir. 2001) (internal quotation marks omitted).

In general, prison overcrowding is actionable only if "the overcrowding subjects a detainee over an extended period to genuine privations and hardship not reasonably related to a legitimate governmental objective." Lareau v. Manson, 651 F.2d 96, 103 (2d Cir. 1981). "The question is one of degree and must be considered in light of the particular circumstances in each case." Lareau, 651 F.2d at 103. Here, Hallett pleads no facts plausibly suggesting that the

6

purported overcrowding caused his dizziness, nausea, "regurgitation," colds, or sore throat. Further, Hallett was only in the holding cell for a few hours, and he does not assert that he was forced to endure the overcrowding in his sleeping area for an extended period of time. See Lareau, 651 F.2d at 103. Accordingly, his overcrowding claims fail.

C.    Unclean Blanket, Mattress, and Clothing

Hallett claims that Defendant Hargrove (1) failed to clean his blanket every three months; (2) failed to clean his mattress every six months; and (3) failed to change his clothes twice a week, thereby violating the Minimum Standards of the New York City Board of Correction and his constitutional rights. (Am. Compl. ¶ 9.) But Hallett fails to allege plausibly that these discomforts constituted objectively serious deprivations. See Brown v. McElroy, 160 F. Supp. 2d 699, 706 (S.D.N.Y. 2001) (plaintiff failed to state a claim of unconstitutional conditions where he alleged that he was kept in an extremely cold cell without clean linens, toiletries, or clean clothing, but admitted that he could keep warm with the blankets he had). Indeed, Hallett admitted in his grievance statement that he had access to clean linens to cover his mattress and blanket. (Grievance at 2.) Further, Hallett did not include complaints about the cleanliness of his mattress, linens, or clothing in his grievance statement, nor did he claim that he suffered rashes on both of his legs as a result of these deprivations. (See Grievance 1-3.) Accordingly, Hallett failed to exhaust his administrative remedies, and his claims regarding the unclean mattress, linens, and clothing fail.

D.    Inadequate Nutrition

Hallett claims that an unspecified dietician failed to provide him with a "diabetic diet" and failed to ensure that he was provided with meals appropriate for a diabetic. (Am. Compl. ¶ 12.) But, in his grievance statement, Hallett did not claim that he was a diabetic.

7

Rather, he alleged only that other diabetic detainees were not issued appropriate diets. (Grievance at 4.) Because Hallett failed to grieve these allegations, he cannot raise them here. See 42 U.S.C. § 1997e(a). Accordingly, Hallett's claim regarding inadequate nutrition is dismissed.

E.   Supervisory Liability

Hallett brings claims under 42 U.S.C. § 1983 against a diverse array of senior DOC officials. To state a § 1983 claim against a supervisor, a plaintiff must allege that the defendant was personally involved in the allegedly unlawful conduct. See Shomo v. City of New York, 579 F.3d 176, 184 (2d Cir. 2009) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation marks omitted)). A plaintiff adequately alleges supervisor liability if

> (1) [T]he defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). Supervisory liability cannot rest on respondeat superior, nor may it rest on mere "proof of linkage in the prison chain of command." Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003) (internal quotation marks omitted).

Under this standard, Hallett fails to state a claim against Defendants Schriro, Davis, and Jennings. He alleges that these defendants were employees with duties related to the operation of GMDC. (See Am. Compl. ¶ 6-7.) But he does not allege that they had "notice of, instituted or became aware of any unconstitutional policy, practice or act" or failed to take action

8

upon learning of any unconstitutional act. Hernandez, 341 F.3d at 145. Accordingly, Hallett's claims against Schriro, Davis, and Jennings are dismissed.

Hallett's claims against the City of New York and PHS fail as well. Hallett claims the City of New York is liable for failing to "properly train [its] staff and employees to ensure that the New York City DOC Minimum Standards [were] enforced." (Am. Compl. ¶ 17.) But he fails to plead facts plausibly suggesting that any named defendant violated his constitutional rights. Therefore, he does not state a claim against the City of New York. Hernandez, 341 F.3d at 144-45. While Hallett also names PHS as a defendant, he fails to explain which claims, if any, he asserts against PHS. (See Am. Compl. ¶¶ 11, 15-19.) "[I]t is well settled that where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted." Ritani, LLC v. Aghjayan, ---F. Supp. 2d----, 2012 WL 2979058, at *9 (S.D.N.Y. 2012) (internal quotation marks omitted). Even if the Court liberally construes Hallett's amended complaint to allege that PHS failed to train or supervise its employees, such a claim fails. Because Hallett does not state a claim for any constitutional violation, he does not state a claim against PHS. See Hernandez, 341 F.3d at 144-45. Accordingly, Hallett's claims against the City of New York and PHS are dismissed.

IV.   Failure to Prosecute

   A. Defendant Mimms

Hallett named "P. Simms" as a defendant in this case. The City of New York identified this defendant as Pauline Mimms and informed Hallett of her correct name and service address. But Hallett never served Mimms. His claims against her are therefore dismissed for failure to prosecute. See Fed. R. Civ. P. 4(m), 41(b).

9

Hallett's claim against Mimms fails on the merits as well. To the extent that Hallett alleges that his efforts to exhaust administrative remedies were futile because Mimms did not respond promptly to his grievance, such a claim fails. Under the applicable grievance procedures, "[i]f the inmate has not received any response within [a] five (5) day period, the inmate should go to the Grievance Office . . . and indicate . . . that a hearing is requested." See Rivera v. Anna M. Kross Ctr., 10 CIV. 8696 (RJH), 2012 WL 383941, at *5 (S.D.N.Y. Feb. 7, 2012) (quoting DOC Directive § IV(B)(1)(d)). And "[c]ourts in this Circuit have repeatedly held that a prisoner in custody of the New York City Department of Correction[] who has not received a response to a grievance but has not requested a hearing has not exhausted his administrative remedies for purposes of the PLRA." Rivera, 2012 WL 383941, at *5. Because Hallett failed to pursue a hearing, his claim against Mimms is unavailing.

## B. Defendants John Doe, Jane Doe, and Hargrove

DOC has been unable to identify Correction Officer John Doe based on Hallett's inadequate description, and Hallett did not serve him. Accordingly, Hallett's claims against John Doe are dismissed for failure to prosecute. See Fed. R. Civ. P. 4(m), 41(b). By contrast, there is no indication that Defendants have taken steps to identify Defendants Jane Doe or Hargrove. In view of Hallett's status as an incarcerated pro se plaintiff, dismissal of the claims against these defendants for failure to prosecute is unwarranted. See Valentin v. Dinkins, 121 F.3d 72, 76 (2d Cir. 1997). Nevertheless, for the reasons stated above, Hallett's claims against these defendants fail on the merits and are dismissed.

V. Injunctive Relief

Hallett fails to state a claim against any named defendant. But his request for injunctive relief "to ensure the departmental policy will be enforced," (Am. Compl. ¶ 20), is defective for an additional reason. Under the PLRA, "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation." Because Hallett is no longer in DOC custody he may not obtain injunctive relief against DOC. See Prins v. Coughlin, 76 F.3d 504, 506 (2d Cir. 1996) ("It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility."). And Hallett's concerns about the treatment of other detainees do not entitle him to relief. See Hinck v. United States, 550 U.S. 501, 510 n.3 (2007) ("[It is a] general rule that a party must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." (internal quotation marks omitted)).[1]

---

[1] Defendants' adherence to this Court's scheduling orders has been less than rigorous. But, notwithstanding his repeated requests, Hallett is not entitled to a default judgment against Defendants because he was not prejudiced as a result of Defendants' tardiness. See Pinaud v. Cnty. of Suffolk, 52 F.3d 1139, 1152 n.11 (2d Cir. 1995) ("[I]n light of the large sum sought by [plaintiff], the disputable merits of his claims, and the lack of any prejudice from [defendant's] failure to answer, . . . it was appropriate to deny Pinaud's motion for a default judgment.").

## CONCLUSION

For the foregoing reasons, Defendants' motion for judgment on the pleadings is granted, and Hallett's amended complaint is dismissed. Hallett's application for "[s]ummary judgment on the pleadings" is denied. The Clerk of the Court is directed to terminate all pending motions, mark this case as closed, and enter judgment for Defendants. This Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. See Coppege v. United States, 369 U.S. 438 (1962).

Dated: September 25, 2012
      New York, New York

                              SO ORDERED:

                              WILLIAM H. PAULEY III
                                    U.S.D.J.

*Copies to:*

Jeffrey Hallett
DIN# 11-R-3878
Mt. McGregor Correctional Facility
1000 Mt. McGregor Rd.
Box 2071
Wilton, NY 12831
*Plaintiff Pro Se*

Marilyn Richter, Esq.
Corporation Counsel of the City of New York
100 Church Street
New York, NY 10007
*Counsel for Defendants*

12